**NATIONAL MULTIWEAVING COMPANY, Inc., Claude L. Young d.b.a. The Inweaving Company of America and Joseph Gainsburg, Plaintiffs,**

v.

**Mrs. Grace O'KEEFE, Defendant.**

**Civ. A. No. 1991.**

United States District Court
S. D. Mississippi, Jackson Division.

Jan. 17, 1956.

**152**

Ernest Shelton, Jackson, Miss., for plaintiffs.

Barnett, Jones & Montgomery, Jackson, Miss., for defendant.

DAWKINS, Sr., District Judge.

Plaintiffs charged defendant with infringement of Patent No. 2,226,449, covering a method of repairing holes in garments caused by burns, snags or tears. They prayed for an injunction, accounting for profits, etc.

Defendant's answer admitted jurisdiction, ownership of the patent by plaintiffs, and their ownership of Capital Weavers, as alleged, but denied infringement and prayed for dismissal of the suit.

The case, therefore, presents only the question of infringement. The application, No. 715,231 for the patent was filed by Frank C. Stephens March 12, 1934, was considered and rejected by the Patent Office. This ruling was affirmed by the Board of Patent Appeals. However, in a suit by Stephens under Section 4915, R.S., Tit. 35 U.S.C.A. Appendix, § 63, in which Stephens included claims of the application Nos. 9, 11, 14, 15, 16, 17 and 19, the District Court for the District of Columbia sustained claims 14, 15, 16, 17 and 19, rejecting the demand as to Nos. 9 and 11. No appeal was taken, and after amending his application to conform to the judgment of the Court, Patent No. 2,226,449 was issued to Stephens May 15, 1940, embracing five claims Nos. 1 to 5 inclusive.[1]

1. "I claim:

1. A method of repairing textile goods consisting in selecting a patch to cover a hole, fraying the edges of the patch, placing the patch over the hole, inserting a hooked needle in the goods to be repaired, *substantially in the plane thereof*, catching a thread of the frayed edge of the patch in the hook, pulling the thread into the goods, and repeating the operation of pulling the threads of the frayed edges into the goods until the patch is secured in position.

2. An improved method of repairing holes in the fabric which consists in preparing a patch of greater size than the hole to be repaired, raveling out at least a portion of the edge of the patch thereby leaving an unravelled portion *corresponding in size and shape with the hole to be repaired*, superimposing the patch with the unravelled portion coinciding with the hole to be repaired, inserting a hooked needle in the goods to be repaired, *in approximately the plane of said goods*, and finally catching the ravelled threads of the patch in the hook and drawing said ravelled threads into the solid portion of the fabric to be repaired, so that the ravelled threads are distributed and merged with the solid portion adjacent to the hole.

3. A method of repairing textile goods consisting in enlarging the hole to be repaired to a hole having straight edges, selecting a patch to cover the hole, fraying the edges of the patch, placing the patch over the hole, inserting a hooked needle in the goods to be repaired *substantially in the plane thereof*, catching a thread of the frayed edge of the patch in the hook, pulling the thread into the goods, and repeating the operation of pulling the threads of the frayed edges into the goods until the patch is secured in position.

4. A method of repairing textile goods consisting in enlarging the hole to be repaired to a hole with straight edges selecting a patch to match the pattern in which the hole is cut, cutting the patch to fit the hole and to have ends of the material to extend past the edges of the hole, inserting a hooked needle in the goods to be repaired *substantially in the plane thereof*, placing the ends of the material of the patch in the hook, pulling the hook and the ends of the material of the patch into the textile goods, and repeating the operation of pulling the ends of the patch material into the textile goods until the patch is secured to the textile goods.

5. A method of repairing textile goods consisting in enlarging the hole to be repaired to a hole having straight edges selecting a patch to cover the hole, cutting the patch to fit one width of the hole, fraying the other edges of the patch, inserting a hooked needle in the goods to be repaired, *substantially in the plane thereof*, catching one thread at a time of the frayed edges of the patch, repeating this operation until two opposite sides of the patch are secured to the goods to be repaired, pulling a cross thread from the patch, inserting a hooked needle in the goods on one side of the patch and approximately in the position from which the cross thread

Plaintiffs, of course, contend that defendant's method is the same or the equivalent of that provided in their patent, while defendant insists that because of its narrow coverage, in view of the prior art and the findings of the District of Columbia Court, her method does not infringe for the following reasons: In each and all of the claims of plaintiffs' patent frayed strands of the patch are drawn into the material to be repaired in a *common plane* after the hole has been squared or its edges trimmed so that the patch fits; whereas defendant's patch is always larger than the hole, and the loose strands or inserts from the outer surface drawn through the material and fastened to the under side of the garment, thus providing a double thickness to the extent of the material under and within the outer edges of the patch, with no trimming or squaring of the edges of the hole to be repaired.

In its findings of fact, the District of Columbia Court said:

"Plaintiff's application discloses a method by which a patch of matching textile material may be placed over a hole in textile material and secured to the damaged textile material in position to cover the hole and effect a repair, the method of repair being the fraying out of a patch to cover the hole, the inserting of a needle having a hook and latch *in the plane* of the goods to be repaired, the catching of the frayed threads of the patch, and the pulling of those threads into the textile material being repaired." (Emphasis added.)

It then referred first to the Encyclopaedia of Needle Work by Dillmont, in that it "disclosed a piece of patching material *larger than the hole*" which was "frayed out at the sides, leaving an unfrayed portion of the sides as the hole; the patch is then placed over the hole and tacked in place, then a needle carrying a loop of thread in its eye is run through the textile material and when the exposed portion of the loop is small, one of the frayed threads of the patch is inserted in the loop and then drawn into the textile material by the continued forward movement of the needle. The same operation is repeated until all of the frayed threads are drawn into the textile material."

The Court next stated that the German patent to Kilzer, No. 480,838 published August 19, 1929 "disclosed * * * a method almost identical to Dillmont * * * *"; and to the Johnson patent No. 1,786,619 in which "a needle having a latch held in a fixed position on a work bench * * * *" was used, and concluded it was "devised *solely* for the purpose of *pulling leather throngs* into prearranged slits in a piece of leather." The judgment concluded that plaintiffs' " * * * method (had) not previously (been) known" to the "prior * * * art"; that it (by the Stephens method) was "practical in application and is commercially successful." As a matter of law the Court concluded that claims 9 and 11 "are too broad in scope and are not patentable"; but, as stated above, allowed the remaining five (14, 15, 16, 17 and 19).

An examination of plaintiffs' exhibits (C4 and C5) which were done by defendant, shows the strands of the patches are woven into the same planes with corresponding threads of the material. This seems necessary whether the strands are drawn in from the upper or lower surface of the material, otherwise they would have to be knotted close to the undersurface to hold, and this it seems would be no different to the ordinary sewed on patch, except for the absence of visible sewing threads on the surface.

With material of a single thickness, as a practical matter, it would further seem to make little difference under the patent whether the strands were drawn into

was removed from the patch, inserting the needle in the goods on the other side of the patch, catching a thread in the hook, pulling the thread into the position in which the needle was placed and repeating the operation until the patch is secured to the goods to be repaired."

the fabric from the outer or inner surface, or as to the type of needle used. The object is to put the frayed threads into place in the fabric alongside those of the latter, in a manner not to be noticeable without careful inspection, which can be done either with the latched needle of plaintiffs, or the plain needle and "tailor's knot" as defendant claims to do.

I am impressed that the judgment holding plaintiffs' method patentable rests largely upon the finding that the patch is woven *into the plane of the fabric,* and if defendant's system in actual use was what she contends, that is the unravelled portion of the patch extends beyond the sides of the hole, so as to leave two thicknesses in a substantial portion of the repaired area, in view of the language used by the Court in comparing the prior art with plaintiffs' method, "inserting a needle having a hook and latch *in the plane of the goods to be repaired* * * *", (Emphasis added), her method would not infringe.

However, in a demonstration at the trial, the Court noted that defendant or her employee had considerable difficulty in using the ordinary needle with the tailor's knot. We are impressed, therefore, that the evidence preponderates substantially in support of the conclusion that defendant used the needle with the latch in repairing the garments of plaintiffs' Exhibits Nos. 4 and 5 and was doing the repairs in the manner provided by the patent.

This repair work was done by defendant on garments which had been supplied by plaintiffs to third persons, without defendant's knowledge, as tests, and after examination appears to have been an infringement of the patent. In fact, defendant admitted she used the Stephens pointed needle with latch on coarse material. She also admitted she had attempted to obtain a franchise under the Stephens patent, after being charged with infringement, but was refused.

Mrs. O'Keefe had been an employee of plaintiffs before going into business for herself, and was familiar with the Stephens method, which she at first attempted to use but which according to her testimony she found unsatisfactory. Of course, this is somewhat inconsistent with an attempt to get a franchise after being confronted with a charge of infringement.

■■ It is not deemed necessary to go fully into the evidence of the case, but suffice it to say that I am convinced infringement has been proven, entitling plaintiffs to a writ of injunction against further infringement, as well as accounting for profits, if any.